Hough, J.
The accident occurred on a bright June afternoon at 5:30 P. M. Plaintiff below walked out of a delicatessen shop, crossed the sidewalk, stepped off the edge of the walk, and was injured.
The claim is made that she did not see the step or ledge intervening between the edge of the sidewalk and the paved roadway, and, while it is probably true that she was not able to see it as she came out of the shop door, there is nothing in the record to show that she could not have seen it plainly as she approached the edge, had she looked. Moreover, she started to cross the street within the block, between street intersections.
The intersections of streets are the commonly accepted and intended places for pedestrians to cross, and while she had the right to cross at any point she chose, under proper circumstances, the proof in this case falls short of assigning any proper reason for the determination to cross within the block. Montgomery v. City of Philadelphia, decided April 18, 1921 (270 Pa. St., 346, 113 Atl. Rep., 357), and City of Dayton v. Taylor’s Admr., 62 Ohio St., 11.
The suggestions would open the door to interesting discussion, if it were not for the fact that the element of contributory negligence is a matter usually considered to be one solely within the province of the jury, and so considered under the state of the proof in this case.
The charges of negligence in the petition are very broad, and the general denial filed puts in issue *377 all the recitals of negligence. In the trial of the case, however, as usually happens, a number of these issues were not supported by proof. The charge that the street was out of repair was not made; nor is the question of notice to the city involved, for the reason that it is conceded that the city constructed the improvement and of course is held to knowledge of the method of construction.
The city laid or authorized the, laying of the sidewalk 8 feet 9 inches in width, although we are not advised when it was laid. The roadway was paved some 10 to 15 years before the time of the trial. A difference, or drop, of 7 inches and 5f inches, or a total of 13 inches, existed between the surface of the sidewalk at its outer edge, and the surface of the paved roadway. To break the drop, or, as one witness testified, to prevent automobile hubs from rubbing against the perpendicular surfaces, or for some other reason, the city had constructed a step or ledge 13 inches wide, 7\ inches below the edge of the sidewalk and 5-f inches above the surface of the street, thus making two curbs, or a double curb.
These facts appear from the record, without contradiction. The reason for the unusual drop from sidewalk to street does not appear. Whether the actual grade of the sidewalk is above the authorized or fixed grade, or whether the actual grade of the paved street is below the authorized or fixed grade, is not developed in the trial. This being an improved street of a city the presumption would exist, in the absence of proof, that the street as well as the sidewalk conforms substantially to grades au *378 thorized by the legislative body of the city, and that the 13-inch drop at that point was a natural condition.
The sidewalk ordinance is pleaded and finally admitted in proof. It provides that walks shall begin at the curb and rise gradually to the building line. That is not at all helpful, without fixing the level of the curb. That subject so far as we are able to discover is touched upon only in one place in the record, on cross-examination of the city’s witness, Graham, page 143:
“Q. Now, Mr. Graham, that curb in Superior Avenue at 12606 Superior is at the regular established grade, is it not ? A. I believe so.
“Q. Well, you know it is, don’t you? A. Yes, as much as I can know anything.”
Which curb was the witness talking .about? There were two; 'one probably the true curb, and the other probably a false curb. For the determination of this question we are left to speculation, and. in that domain it may be said that very likely when the street was paved, in order to take out a rise in the natural surface of the ground in that vicinity, a cut was made, and then to break or ease the drop a step or false curb was constructed.
This may or may not have been the reason, or there may have been another substantial reason. No proof was offered that there was defective construction iri the sidewalk, curb, or pavement; nor of the use of inferior materials, nor of defective workmanship. Neither is it said that any part of it was out of repair. It is the plan or scheme of con *379 struction that is claimed to be dangerous and unsafe, and therefore a nuisance. The plan certainly was a simple one, dealing with a situation that existed at that place. It cannot be fairly said that the construction of a step there was any more dangerous than leaving a perpendicular drop of 13 inches. There was nothing hidden or obscured, but on the contrary all was plain, simple and perfectly apparent to one approaching and looking downward.
It is the condition that there obtained in the abstract against which the charge of negligence is lodged. No proof of an explanatory nature, showing the whys and wherefores, and no expert testimony touching the question of. good engineering or faulty engineering was offered; no testimony directed towards the abrupt departure from the authorized rules and methods fixed by the city council, from which the jury might have drawn a fair inference of negligence.
A municipal corporation is not an insurer of the safety of persons in the use of its streets and sidewalks. City of Dayton v. Glaser, 76 Ohio St., 471, and Gibbs v. Village of Girard, 88 Ohio St., 34.
“While a municipality must generally respond in damages for injuries caused by its negligence, acts, or omissions in connection with the streets and sidewalks under its care and control, it cannot be held responsible for injuries caused by every depression, difference in grade, or unevenness in sidewalks.” Cordish v. Bloom, Ct. of Appeals, Md., Mar. 1st, 1921 (113 Atl. Rep., 578).
*380 Unlike the Gibbs case, supra, the record before us fails to develop or have within it any evidence of some of the necessary elements of negligence which would entitle the plaintiff below to recover.
“A municipality is not required to so construct all its sidewalks that they shall meet upon exactly the same level, and the mere existence of a descent, slope, or step in the sidewalk of a city does not render it liable for accidents to persons in stepping from one elevation to another.” 28 Cyc., 1371, and Morgan v. City of Lewiston, 91 Me., 566, 40 Atl. Rep., 545.
“Constructing a sidewalk elevated above the surface thirty inches, and without guard rails, is not negligence per se, nor conclusive evidence that such sidewalk when it is so constructed is a place of danger.” City of Sumner v. Scaggs, 52 Ill. App, 551.
“Where two portions of a sidewalk on a street descending a hill were built on two different planes, divided by a perpendicular wall several feet in height, the building of steps with a suitable railing might be a proper method of connecting the two portions.” Hoyt v. City of Danbury, 37 Atl. Rep., 1051 (69 Conn, 341).
“The building of a sidewalk by a city with a step, which, from the nature of the grade, the city government deems necessary and proper, is not such negligence as will warrant a recovery against the city by one injured in a fall caused by the step, unless the plan of construction adopted was mani *381 festly unsafe.” Teager v. City of Flemingsburg, 109 Ky., 746, 95 Am. St. Rep., 400.
“The existence of a step, properly constructed, from a sidewalk to a street crossing, is not a defect, so as to render a city liable for accidents to pedestrians.” Miller v. City of St. Paul, 38 Minn., 134.
Nor is this view of the case, in the absence of some evidence tending to show that the method of construction employed, or some similar method, was not necessary under that particular situation, in conflict with the settled law in Ohio, the most recent announcement of which appears in the case of Schell v. DuBois, Admr., 94 Ohio St., 93, that the violation of a municipal ordinance, passed in the proper exercise of the police power, in the interest of public safety, and not in conflict with general laws, is negligence per se.
It nowhere appears that legislative requirements were not complied with by the city, either absolutely or substantially, or to the fullest extent that the circumstances of the case would permit.
The judgment entered on the verdict was contrary to law, and the motion for a new trial should have been sustained.
The judgments of the court of common pleas and the court of appeals are reversed, and the cause is remanded to the court of common pleas for further proceedings according to law.

Judgments reversed.

Marshall, C. J., Johnson and Jones, JJ., concur.